NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FENF, LLC,**
*Plaintiff-Appellee,*

**v.**

**SMARTTHINGZ, INC.,**
*Defendant-Appellant.*

---

2014-1490

---

Appeal from the United States District Court for the Eastern District of Michigan in No. 2:12-cv-14770-PJD-MKM, Judge Patrick J. Duggan.

---

Decided: February 6, 2015

---

RICHARD W. HOFFMANN, Reising Ethington P.C., of Troy, Michigan, argued for plaintiff-appellee. With him on the brief was MICHAEL J. DRUZINSKI.

CHRISTOPHER K. HU, Blank Rome LLP, of New York, New York, argued for defendant-appellant.

---

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

LOURIE, *Circuit Judge.*

SmartThingz, Inc. ("SmartThingz") appeals from the decisions of the United States District Court for the Eastern District of Michigan granting a permanent injunction against SmartThingz, and entering final judgment in favor of FenF, LLC ("FenF"). *FenF, LLC v. SmartThingz, Inc.*, No. 12-cv-14770, 2014 WL 1431692 (E.D. Mich. Apr. 14, 2014) ("*Injunction Order*"); J.A. 30. The judgment was entered in accordance with a stipulation by the parties that under the court's construction of the term "separators" in *FenF, LLC v. SmartThingz, Inc.*, No. 12-cv-14770, 2013 WL 3868071 (E.D. Mich. July 25, 2013) ("*Opinion*"), SmartThingz's accused product infringed the asserted claim of U.S. Patent 8,002,675 ("the '675 patent") and the claim was not invalid. J.A. 30. Because we find that the district court erred in construing the term "separators" in claim 35, we *vacate* the district court's final judgment and the permanent injunction, and *remand* for further proceedings.

## BACKGROUND

FenF owns the '675 patent, which is directed to foot therapy devices for aligning, stretching, and exercising toes. Claims 1–34 recite, and the majority of the specification describes, foot therapy devices comprising one or more "posts" formed of an elastic material, to be placed between a user's toes in order to stretch the toes. At issue in this case, however, is claim 35, which reads as follows:

35. A foot-therapy and toe-aligning device, comprising:

a frame with four *separators* for separating a plurality of toes, wherein the frame comprises a top portion, a bottom portion, a front portion, and a back portion, with the separators connecting the top portion with the bottom portion;

wherein the separators, in combination with the top portion and the bottom portion, form three holes through the frame for insertion of a plurality of toes, wherein each hole includes an entrance into the back portion, an exit from the front portion, and surrounding walls connecting the entrance with the exit;

wherein the four separators include two outer separators and two inner separators, such that each of the two outer separators include an inner portion that forms a surrounding wall in a corresponding hole and an outer portion that does not operate as a surrounding wall to a hole; and

wherein at least one of the top portion and the bottom portion includes at least one elongated section that extends beyond the outer portion of at least one of the two outer separators.

'675 patent col. 19 l. 7–col. 20 l. 13 (emphasis added).

FenF sued SmartThingz, alleging infringement of the '675 patent by SmartToes, a foot therapy product imported by SmartThingz. The parties narrowed the issues by stipulating that the asserted infringement was based solely on claim 35, and that SmartThingz would file a motion for summary judgment of invalidity under § 102(b) based on U.S. Patent 6,238,357.

SmartThingz filed its motion for summary judgment, asserting that no claim construction was necessary. However, the district court held a claim construction hearing to consider two phrases containing the term "separators." The court construed "separators" to mean "posts formed of an elastic material (or a material with elastomeric properties) such that they have the ability to stretch and elongate vertically and expand outwardly." *Opinion* at *5, *7.

Drawing from the specification, the district court noted how the patent emphasizes the "important effects" of the elastic characteristics and how the improvements over the prior art are premised on the use of an elastic material. *Id.* at \*5. The court stated that the patent describes posts "as a particular formulation of a separator (i.e., one made from an elastic material)" and determined that "all posts are separators but not all separators are posts." *Id.* at \*6. Nonetheless, the court found that the patent "equates" posts with separators, rather than treating them as two different "aspects" of the device. *Id.* The court accordingly held that "a device comprised of separators 'formed of an elastic material' is the *only* invention the '675 patent covers." *Id.* (emphasis added). The court therefore concluded that claim 35 uses the term "separators" to refer to "a specific category of separators" in the context of the patent as a whole. *Id.* at \*7.

Under the district court's construction, SmartThingz conceded that its motion for summary judgment of invalidity must be denied, and stipulated to infringement of claim 35 to put the case in a posture for appeal.

FenF then moved for a permanent injunction, which the district court granted. *Injunction Order* at \*5. The court found that SmartThingz's stipulation of infringement sufficed for FenF to demonstrate its success on the merits. *Id.* The court accordingly issued a permanent injunction and entered a final judgment in favor of FenF. J.A. 30.

SmartThingz timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's claim construction *de novo* because the intrinsic record—the claims, the specification, and the prosecution history—fully informs the proper construction in this case. *See Teva Pharm. USA,*

*Inc. v. Sandoz, Inc.*, 574 U. S. \_\_\_, 135 S. Ct. 831, 841 (2015). The district court's claim construction relied only on intrinsic evidence, not on any testimony by one of ordinary skill in the art about the meaning of separators in the relevant art during the relevant time period.

The words of a claim are generally given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art when read in the context of the entire patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citations and internal quotation marks omitted). "Claims must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The specification is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

SmartThingz argues that "separator" did not need to be construed because the patent uses the ordinary meaning of "something that separates," without a limitation of elasticity. SmartThingz contends that the patent differentiates between separators and posts, which the district court acknowledged in juxtaposition with its conclusion that separators are posts. According to SmartThingz, posts in the context of the patent are a subset of separators, with a specific characteristic of elasticity. All of the examples cited by the district court to support its construction, SmartThingz notes, refer to the elastic characteristic of posts, not separators. SmartThingz further asserts that the patent discloses two different embodiments: one with posts, which must be elastic and is claimed in claims 1–34, and one with separators, which is more generic and is claimed in claim 35.

FenF responds that the patent as a whole teaches that the separators of the invention must be elastic. The

phrase "the present invention" is repeatedly used, FenF asserts, to highlight the importance of the elastic nature of the device and its corresponding ability to conform its shape to the user's toes. FenF argues that the specification clearly teaches that elasticity is a universal, functional feature for all embodiments of the invention, not merely a structural feature of the preferred embodiment. FenF contends that because posts and separators are related structures and have the same core function, the characterizations of the desired elasticity of posts in the specification are equally applicable to separators. Moreover, FenF argues, the specification distinguishes the invention as a whole over the prior art based on the disclosed elastic features, and thus disavows devices with rigid separators.

We agree with SmartThingz that "separators" in the '675 patent are not necessarily formed of an elastic material. The word is not so limited in the text of the claim or in the context of the entire patent.

Claims 1–34 recite devices with posts, and we note that no one disputes that posts in the context of this patent must be formed of an elastic material. But nothing in the intrinsic record states that a separator is a post. Posts are not the same as separators, even if they both serve the same function of separating toes. Claim 35 is the only claim that recites a device with separators. It is also the only independent claim that does not recite "post(s) formed of an elastic material." *Compare* '675 patent col. 16 l. 31 (claim 1), *id.* col. 17 l. 3 (claim 9), *id.* col. 18 l. 12 (claim 24), *id.* col. 18 l. 49 (claim 31), *and id.* col. 18 l. 61 (claim 33), *with id.* col. 19 l. 7–col. 20 l. 13 (claim 35). The language of claim 35 itself does not limit the term separators to being formed of an elastic material or having elastic properties. The scope of the claim, therefore, does not appear restricted to encompassing only embodiments formed of an elastic material.

The specification also discloses certain embodiments—with posts—that must be formed of an elastic material, and one particular embodiment—with separators—that has no associated elastic properties. In a specification, the phrase "the present invention" is quite often a keystone for interpreting a claim in light of the specification rather than in accordance with meanings it could otherwise be given. *G.E. Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). The phrase usually prefaces some circumscription of the meaning of certain claim language. Even though it appears throughout the specification of the '675 patent, however, the phrase here appears to refer to separate embodiments, with language that is tracked in separate claims. For example, in the Summary of the Invention section, the specification describes thirty discrete aspects of the present invention, of which only the twenty-seventh aspect uses the word separator. '675 patent col. 3 l. 13–col. 5 l. 34. Most of these aspects are incorporated virtually verbatim throughout claims 1–34, and the twenty-seventh aspect mirrors claim 35.

Further support for this differentiation of embodiments comes from the corresponding descriptions of Figures 1–14, which depict various possible embodiments with posts, contrasted with the description of Figure 15, which has separators. As the district court noted, the Detailed Description section repeatedly emphasizes the importance of the posts of the invention being formed of an elastic or elastomeric material. *See Opinion* at *5. Those descriptions, however, are all directed to Figures 1–14 and Claims 1–34.

Ultimately it is the patent's very specific description of Figure 15, which in turn depicts what is claimed in claim 35, that makes clear that separators need not be of an elastic or elastomeric material to fall within the bounds of that claim. Figure 15 is discussed starting in column 13, where the first and only instance of the word

separator appears in the Detailed Description section. '675 patent col. 13 l. 59. There, the patent expressly states that separators may be made of *various* suitable materials, including plastic, silicone, and cork, *id.* col. 13 ll. 60–62. It then goes on to explain how "an openable toe hole" allows for "easy insertion" of toes, *id.* col. 14 ll. 11–15, and touts the advantages of openable toe holes in "accommodation of toe movement/articulation," *id.* col. 14 ll. 44–54. The description does not state that the device with separators shown in Figure 15 must be formed of an elastic or elastomeric material, has posts, or is beneficial over the prior art for its elastic or elastomeric properties. We therefore conclude that the district court erred in construing "separators" as narrowly as it did.

Although we have determined that the term is not as limited as construed by the district court, we also note for purposes of remand that we find no indication that the patentee acted as his own lexicographer with regard to the term "separator" or disavowed any particular meaning of the term. Based on the intrinsic evidence, we understand the plain and ordinary meaning of "separators" in claim 35 in the context of the '675 patent to be "structural features that can be placed between toes." For the sake of clarity, we note that separators may be, *but are not necessarily*, formed of an elastic or elastomeric material.

Because of the revised claim construction, we vacate and remand for further proceedings consistent with this opinion. The concessions and stipulations regarding invalidity and infringement were based on the erroneous claim construction; ergo, the permanent injunction must also be vacated.

## CONCLUSION

We have considered the remaining arguments and conclude that they are without merit. For the foregoing reasons, we vacate the final judgment and the permanent injunction, and remand the case.

## VACATED AND REMANDED

Costs

Costs to SmartThingz.